UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSUE DAVID SANCHEZ SILVA, | CASE NO. C26-0693JLR |
| Petitioner, | ORDER |
| v. | |
| WARDEN NORTHWEST DETENTION CENTER, | |
| Respondent. | |

## I.    INTRODUCTION

Before the court is *pro se* Petitioner Josue David Sanchez Silva's petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Am. Pet. (Dkt. # 5); Traverse (Dkt. # 10).) The Government[1] opposes the petition.  (Return (Dkt. # 7).)  The court has considered the

---

[1] Petitioner did not name any federal respondents in this action.  (*See* Pet. ¶ 8.)  U.S. Immigration and Customs Enforcement ("ICE") Acting Seattle Field Office Director Julio Hernandez; U.S. Department of Homeland Security ("DHS") Secretary MarkWayne Mullin; DHS; and former U.S. Attorney General Pamela Bondi (collectively, the "Government") appeared in this action as an Interested Non-Party.  (*See* Return (Dkt. # 7) at 1.)

ORDER - 1

petition, the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS the petition.

## II.   BACKGROUND

Petitioner is a citizen of Ecuador who entered the United States on April 17, 2024, at or near the Eagle Pass, Texas, port of entry.  (Rodriguez Decl. (Dkt. # 9) ¶ 5.)  After determining that Petitioner was inadmissible due to a lack of documents sufficient for lawful entry, the Government (1) served him a Notice to Appear ("NTA"), (2) granted him parole, and (3) placed him in immigration proceedings in Newark, New Jersey.  (*Id.* ¶¶ 5-6; Steveson Decl. (Dkt. # 8) ¶ 2, Ex. A (April 2024 I-213) at 2-3; *id.* ¶ 3, Ex. B (Notice to Appear); *id.* ¶ 2, Ex. C (I-94).)  Petitioner subsequently applied for asylum and withholding of removal with the Newark, New Jersey immigration court.  (*See* Rodriguez Decl. ¶ 7 (stating that on October 7, 2025, Petitioner paid the fee for his application for asylum and for withholding or removal).)  On January 21, 2026, ICE encountered Petitioner in Pittsburgh, Pennsylvania.  (Steveson Decl. ¶ 2, Ex. D (January 2026 I-213).)  ICE determined that Petitioner had not updated his address with the immigration court and brought Petitioner into federal custody.  (Rodriguez Decl. ¶ 9.)  Petitioner subsequently filed a change of address with the Newark, New Jersey Immigration Court and listed an Etna, Ohio, address.  (*Id.* ¶ 10; Steveson Decl.¶ 4, Ex. E (Change of Address).)  Shortly after re-detaining him, the Government transferred Petitioner first to the Port Isabel Service Processing Center in Los Fresnos, Texas; subsequently to the Arizona Removal Operation Coordination Center; and, finally, to the Northwest ICE Processing Center, where he has since remained.  (Rodriguez Decl. ¶¶ 11-13.)  Petitioner

ORDER - 2

is proceeding *pro se* in his immigration proceedings and his individual hearing was scheduled for March 27, 2026.  (Rodriguez Decl. ¶¶14-15.)

On February 26, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Pet. (Dkt. # 3).)  On March 6, 2026, Petitioner filed an amended petition seeking his immediate release or, in the alternative, a bond hearing.  (Am. Pet. at 6.)  Petitioner asserts that his detention violates his due process rights.  (*Id.* ¶ 17.)  The petition is now fully briefed and ripe for the court's consideration.

### III.   ANALYSIS

Habeas petitioners must provide by preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States."  8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Thus, even when the government believes it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process.  *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.")

ORDER - 3

(citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Parole Statute provides the Secretary of Homeland Security discretion to grant parole on a case-by-case basis for "urgent humanitarian reasons or significant public benefit [.]"  8 U.S.C. § 1182(d)(5)(A).  When the Secretary grants a noncitizen entry to the United States on parole, such

> [r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.  Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings.  Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal.

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

DHS's decision to revoke a noncitizen's parole under § 1182(d)(5)(A) must be made on an individualized basis and carried out only after the purposes of the parole have been served.  *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("Common sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis.") (citation omitted); 8 U.S.C. § 1182(d)(5)(A).  Furthermore, the noncitizen must receive written notice of the parole's termination.  8 C.F.R. § 212.5(e).

ORDER - 4

Here, the court concludes that the Government (1) revoked Petitioner's parole and brought him into federal custody without adequate consideration of individualized facts and circumstances, including the absence of changes that justify revocation of his parole, and (2) re-detained him without the lawful authority of persons authorized to revoke his release or the minimum amount of process due, both of which violate his rights under the Fifth Amendment.

In so holding, the court rejects the Government's assertions that it may validly revoke Petitioner's parole without notice or process because (1) Petitioner's parole expired in April 2025 after the Government re-detained him and (2) "Petitioner is mandatorily detained as an arriving alien."  (*See generally* Return); *see P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).  Several courts in this Circuit that have reviewed this question determined that neither a now-expired parole nor a noncitizen's status as an arriving alien is sufficient for the Government to revoke parole without complying with the relevant statutory and regulatory provisions.  *Bostock*, 792 F. Supp. 3d at 1123; *Dieng v. Hermosillo*, No. C26- 0190LK, 2026 WL 411857, at *9 (W.D. Wash. Feb. 13, 2026); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (compiling cases).

First, as to Petitioner's individualized circumstances, the Government does not assert that it revoked Petitioner's parole because the DHS Secretary determined that the

ORDER - 5

purposes of the parole have been served or that humanitarian reasons and public benefit do not warrant parole.  (*See generally* Return); 8 C.F.R. § 212.5(e); *see* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled").  Similarly, the Government does not contest that Petitioner has no arrests or criminal history in the United States.  (*See* January 2026 I-213 at 3 ("Apart from his encounter with ICE, [Petitioner] has no other criminal history.").)

Furthermore, although the Government asserts that it revoked Petitioner's release because he failed to update his location with the immigration court, the Government has adduced no evidence and cited no authority by which the court may conclude that such a violation constitutes grounds for revoking Petitioner's parole.  (*See generally* Return.)  In its briefing, the Government cites to the NTA as evidence that it "warned Petitioner to keep his address updated with the immigration court and with [DHS]."  (Return at 3 (citing NTA at 2).)   The NTA simply states that, if Petitioner fails to update his address, the Government "shall not be required to provide [him] with notice of his [immigration court] hearing."  (NTA at 2.)

The Government's appeal to the parole's so-called expiration is similarly unpersuasive.  (Return at 4, 6.)  Other courts that have considered this question have held that a petitioner's "parole remains active despite the expiration of [the] I-94." *Arias*, 2025 WL 3295385, at *4.  First, because the I-94 is not specific to noncitizens paroled under Section 1182 and because the departure date is recorded at the time the form is issued, "the listed departure is unlikely to bind humanitarian paroles who are governed

ORDER - 6

under the framework[.]" *Id.* Furthermore, "[a]n *ex ante* record cannot constitute the real-time 'opinion of the Attorney General' that the purpose of parole has been served and the noncitizen must be detained or removed." *Id.* (emphasis in the original) (citing 8 U.S.C. § 1182(d)(5)(A)). Consequently, Petitioner's expired I-94 does not constitute a basis for his continued detention.

Finally, courts in this Circuit have concluded that the Government "acted arbitrarily and capriciously and violated the [Administrative Procedure Act]" where, as here, the Government fails to follow required procedure or demonstrate that its revocation of a petitioner's parole is the product of reasoned decisionmaking. *Bostock*, 792 F. Supp. 3d at 1146. Thus, when a petitioner's parole was improperly revoked, he is ineligible for detention and the court need not consider which statute applies to Petitioner's detention. *See Arias*, 2025 WL 3295385 at *4 (so concluding).

Next, as to Petitioner's due process rights, the Government's conduct is deficient in several ways. Because Petitioner challenges an administrative action depriving him of his liberty, the *Mathews* balancing test applies here. The *Mathews* test determines whether an administrative procedure provides the process constitutionally due and weighs three factors: (1) the petitioner's private interest, (2) the risk of an erroneous deprivation, and (3) the Government's interest. *See Mathews*, 424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g., Torres v. Hermosillo*, No. C25-2687LK, 2026 WL 145715, at *6 (W.D. Wash.

ORDER - 7

Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173KKE, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

The court agrees with Petitioner that the *Mathews* test compels a finding that due process required the Government to provide notice and an opportunity to respond *before* depriving him of his liberty. (*See* Traverse at 1-2.) In so holding, the court adopts the reasoning set forth by the Honorable Kymberly K. Evanson in *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) and finds (1) Petitioner's interest in not being detained is "the most elemental of liberty interests[,]" (2) the risks of erroneous deprivation of liberty are high, and (3) the Government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was previously released. *Id.* at 1320-24 (citation omitted). Therefore, the court concludes that the *Mathews* factors weigh in Petitioner's favor and his re-detention without notice or a pre--deprivation hearing violated his due process rights.

Finding that Petitioner is entitled to relief under the Fifth Amendment, the court grants his habeas petition.

## IV. CONCLUSION

Accordingly, the court ORDERS as follows:

(1) The petition for a writ of habeas corpus (Dkt. # 5) is GRANTED;

(2) The Government SHALL release Petitioner Josue David Sanchez Silva from detention within FORTY-EIGHT (48) hours subject to the conditions of his most recent parole agreement;

ORDER - 8

(3) Within SEVENTY-TWO (72) hours of this Order, the Government SHALL file with the court a status report confirming that Petitioner has been released from custody and informing the court of the date and time of his release.

Dated this 6th day of April, 2026.

_____

JAMES L. ROBART
United States District Judge

ORDER - 9